IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| MARK FIELDS, | : | |
| | : | |
| Plaintiff, | : | Civil No. 07-2715 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MORGAN TIRE AND AUTOMOTIVE, INC., et al. | : | |
| | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

Presently before the Court is a motion by Defendants Morgan Tire and Automotive, Inc. ("MTA") and Jay Sporn (collectively "Defendants") to dismiss, compel mediation and arbitration, and stay proceedings in the case brought by Plaintiff Mark Fields ("Plaintiff"). Plaintiff alleges that Defendants discriminated against him while he worked for MTA. For the reasons set forth below, this Court will grant Defendants' motion.

**I.     BACKGROUND**

MTA operates an automobile tire, equipment, and service center business with locations throughout southern New Jersey and southeastern Pennsylvania. On July 1, 2002, MTA hired Plaintiff, who is African American, as a salesperson. Jay Sporn, district manager for MTA's southern New Jersey stores, supervised Fields beginning in October 2004. Plaintiff alleges that despite assurances that he would be promoted to the next available store manager position, he was continually passed over in favor of Caucasians and that finally after four years, he quit in

frustration.

In September 2003, MTA instituted its EDR Plan requiring mediation and arbitration to resolve employment-related disputes between employees and the company.  The cover page of the EDR Plan states in boldface capital letters the following:

> The Employee Dispute Resolution Plan is the exclusive means of resolving employment-related disputes. All persons who apply for employment, accept employment, continue working for, or accept any promotions, pay increases, bonuses, or any other benefits of employment from Morgan Tire and Auto, Inc. agree to resolve all such disputes through the mediation and binding arbitration process described herein instead of through the court system.

(Smith Aff. Ex. 1.)  Inside the EDR Plan, it provides further:

> The EDR Plan is the exclusive, final and binding means by which Disputes can be resolved.  The only method by which a Party can seek relief in a court of law is in accordance with the provisions of the [Federal Arbitration] Act.  Except as provided herein, the Parties shall have no right to litigate a Dispute in any other forum.  Consequently, the institution of a proceeding under this plan shall be a condition precedent to the initiation of any legal action by an Employee against the Company and any such legal action shall be limited to those actions available under the Act.

On December 11, 2003, Plaintiff signed an acknowledgment attesting that he received and had the opportunity to review the EDR Plan and that it "fully defines the disputes that are covered, describes the procedures for mediation and arbitration, and sets forth the remedies I may obtain." (Defs.' Br. Ex. B.)  Plaintiff states that on that day, a store manager gave him a copy of the EDR Plan and told him to sign the form immediately, "or there would be repercussions."

After leaving MTA, Plaintiff filed a complaint alleging that Defendants failed to promote and constructively discharged him because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination.  Seeking to invoke MTA's EDR Plan, Defendants filed their motion to dismiss, compel mediation and

arbitration, and stay proceedings pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II.     STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction.  The Rule is "typically used when the claim does not involve a federal question and there is no diversity of citizenship between the parties or other basis for the federal court to exercise its limited jurisdiction"; however, it is a flexible rule that "serv[es] as a vehicle for raising various residual defenses," including motions to dismiss for failure to arbitrate. Thompson v. Nienaber, 239 F. Supp. 2d 478, 483 (D.N.J. 2002) (internal quotation marks and citations omitted).

The burden of persuasion rests with the plaintiff when subject matter jurisdiction is challenged under Rule 12(b)(1).  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In considering a motion to dismiss for lack of subject matter jurisdiction, "the person asserting jurisdiction bears the burden of showing that the case is properly before the Court at all stages of the litigation." Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993). Furthermore, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

## III.    DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, guarantees that any agreement to settle a dispute by arbitration in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract." 9 U.S.C. § 2.  The parties agree that the FAA governs in this case.

In enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."  Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).  Congress intended the FAA "to abrogate the then-existing common law rule disfavoring arbitration agreements 'and to place arbitration agreements upon the same footing as other contracts.'"  Martindale v. Sandvik, Inc., 800 A.2d 872, 876 (N.J. 2002) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)).  As a result, parties may waive statutory remedies and the right to trial by jury in favor of arbitration.  See Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 773 A.2d 665, 670 (N.J. 2001).

In determining whether to enforce a private arbitration agreement, a court must engage in a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement.  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (citing AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)).  To ascertain the existence and scope of an agreement to arbitrate, the Court must apply state contract principles.  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002).  As the New Jersey Supreme Court has observed, "consistent with federal law, a state cannot subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts."  Leodori v. CIGNA Corp., 814 A.2d 1098, 1104 (N.J. 2003).  Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (holding that the FAA provisions indicate a "liberal federal policy favoring arbitration agreements").

In spite of the FAA's policy favoring arbitration, the New Jersey Supreme Court has set a high threshold for the language necessary to validly waive judicial remedies in an arbitration agreement. In doing so, the Court cited the state's "clear public policy . . . to abolish discrimination in the work place," and relied on the principle of contract interpretation that "a party's waiver of statutory rights 'must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.'" Garfinkel, 773 A.2d at 670 (quoting Fuchilla v. Layman, 537 A.2d 652 (N.J. 1988); Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 393 A.2d 267 (N.J. 1978)). Consequently, a waiver of the right to seek judicial adjudication of statutory remedies is enforceable only if it reflects that the employee "has agreed clearly and unambiguously to arbitrate the disputed claim." Leodori, 814 A.2d at 1104.

### A. Validity of Agreement to Arbitrate

The threshold issue is whether under New Jersey law the EDR Plan constitutes a valid contract to arbitrate between Plaintiff and Defendants. See Martindale, 800 A.2d at 878. New Jersey courts apply common law contract principles, so a promise is enforceable against the promisor if the promisee gave some consideration for the promise. Id. "The essential requirement for consideration is a bargained-for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relationship." Id.

A valid agreement to arbitrate exists between the parties. First, Plaintiff signed an

acknowledgment attesting that he received and had the opportunity to review MTA's EDR Plan and that the EDR Plan "fully defines the disputes that are covered, describes the procedures for mediation and arbitration, and sets forth the remedies [he] may obtain."  See Hogan v. Bergen Brunswig Corp., 378 A.2d 1164, 1166-67 (N.J. Super. Ct. App. Div. 1977) (finding employee's "acknowledgment" of receipt of employer's terms constituted employee's agreement to them). Moreover, Plaintiff continued his employment with MTA and received raises following notification that acceptance of any benefits from the company, including pay increases, equated to agreement to resolve all employment-related disputes through arbitration.  In re The Score Board, Inc., 238 B.R. 585, 591 (D.N.J. 1999) (citing Lahue v. Pio Costa, 623 A.2d 775 (N.J. Super. Ct. App. Div. 1993)) ("Performance of a contract's executory obligations can serve as acceptance even in the absence of any writing.").  In these two respects, Plaintiff manifested acceptance of MTA's EDR Plan.

Furthermore, there was consideration for the bargain.  Continued employment can constitute sufficient consideration to support employment-related agreements.  Martindale, 800 A.2d at 879 (citing Quigley v. KPMG Peat Marwick, LLP, 749 A.2d 405, 413 (N.J. Super. Ct. App. Div. 2000); Hogan, 378 A.2d at 1165).  Also, the EDR Plan provides that "both employees and the Company give up their right to a court case or jury trial as a means of resolving disputes covered by the EDR Plan."  (Smith Aff. Ex. 1 at vi).  Thus, the EDR Plan is by its own terms mutual, thereby satisfying the requirement for consideration.  See Oscar v. Simeonidis, 800 A.2d 271, 276 (N.J. Super. Ct. App. Div. 2002) (stating that mutual promises are reciprocal considerations for each other).

Plaintiff argues that the EDR Plan is unenforceable because he alleges he did not

6

knowingly and voluntarily waive his right to a jury trial.  He maintains that he was not given the opportunity to review the plan, ask questions about it, take it home to study, or to consult with anyone about it, suggesting the EDR Plan is an adhesion contract.  The New Jersey Supreme Court, however, has recognized that unless the terms of an arbitration agreement are oppressive or unconscionable, the public interests weigh in favor of enforcement.  <u>Martindale</u>, 800 A.2d at 881; <u>see also</u> <u>Quigley</u>, 749 A.2d at 412 ("courts . . . have consistently determined that the economic coercion of obtaining or keeping a job, without more, is insufficient to overcome an agreement to arbitrate statutory claims.").  Significantly, Plaintiff has not alleged that the terms of the EDR Plan are oppressive or unconscionable.  In addition, the EDR Plan explains precisely the rights Plaintiff was waiving by signing it.  The EDR Plan explicitly states that it uses mediation and arbitration "instead of juries, courts or administrative bodies" (Smith Aff. Ex. 1 at i.), thereby conveying that Plaintiff is waiving his "time-honored right to sue."  <u>See</u> <u>Garfinkel</u>, 773 A.2d at 672.  As a result, the EDR Plan is a valid and enforceable agreement between Plaintiff and Defendants.

      B.     **Scope of Agreement to Arbitrate**

The scope of the agreement is determined based on the parties' intentions as set forth in the writing.  <u>Martindale</u>, 880 A.2d at 881.  The EDR Plan states in the "common questions and answers" section that included among the "disputes" covered are "legal claims recognized under federal, state or local law involving . . . your employment with the company . . . [including] discrimination based on age, sex, race, color, national origin, disability, or religion."  Plus, the EDR Plan provides even more detail at section 2.D, where it references constructive discharges.  Furthermore, neither Congress nor the New Jersey legislature have precluded a waiver of judicial

remedies for Title VII or New Jersey Law Against Discrimination claims.  See Circuit City Stores, Inc., 532 U.S. 105, 123 (2001) (enforcing arbitration agreement with respect to Title VII claim); Martindale, 880 A.2d at 882 (enforcing arbitration agreement with respect to NJLAD claim).  Consequently, the EDR Plan plainly encompasses Plaintiff's claims.

### IV. CONCLUSION

Based on the foregoing reasoning, this Court will grant Defendants' motion to dismiss, compel mediation and arbitration, and stay proceedings.  An accompanying Order shall issue today.


Dated: 3-18-08                                              s/ Robert B. Kugler
                                                                       ROBERT B. KUGLER
                                                                       United States District Judge